IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH SCIARRINO, et al.**, <br><br> Plaintiffs, <br><br> *v.* <br><br> **STATE FARM FIRE AND CASUALTY COMPANY,** <br><br> Defendant. | **CIVIL ACTION** <br><br><br> **NO. 2:20-cv-2930-KSM** |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                                                                  **August 4, 2020**

Plaintiffs Joseph and Rebecca Sciarrino bring claims for breach of contract and bad faith against their insurance company, Defendant State Farm Fire and Casualty Company. State Farm removed the case from the Court of Common Pleas for Philadelphia County. The Sciarrinos have moved to remand. For the reasons discussed below, their motion is granted.

I.

In 2019, the Sciarrinos filed a claim with State Farm for water damage to their home. (Doc. No. 1-1 at p. 13.) State Farm denied the majority of the claim, and the Sciarrinos filed this case against the company in the Court of Common Pleas for Philadelphia County. (Doc. No. 1-1.) They allege that State Farm wrongly denied them benefits under their home insurance policy, and they bring two counts against the company, one for breach of contract and the other for statutory bad faith. (*Id.*) Each count includes an *ad damnum* clause, which demands "judgment against Defendant in an amount not in excess of $50,000 together with interest and court costs." (*Id.* at pp. 6, 8.) However, under their bad faith claim, the Sciarrinos also allege that State Farm is liable for "statutory damages including interest . . . , court costs, attorneys' fees, punitive

damages, and such other compensatory and/or consequential damages as are permitted by law." (*Id.* at p. 7, ¶ 16.)

State Farm removed the case to this Court on diversity grounds and one week later, filed a partial motion to dismiss. (Doc. Nos. 1 & 3.) The Sciarrinos then moved to remand, contending that we lack subject matter jurisdiction because this case does not satisfy 42 U.S.C. § 1332's amount in controversy requirement. (Doc. No. 6.) After briefing was complete on the motion to remand, the Sciarrinos filed an amended complaint, in which they continue to "contest[ ] that venue properly lies in the United States District Court, District of New Jersey [sic] because the amount in controversy is not above $75,000."[1] (Doc. No. 9 at ¶ 5.)

II.

Under 28 U.S.C. § 1441(a), a defendant in a civil action in state court may remove the case to federal district court if the federal court would have original jurisdiction. Federal district courts have "original jurisdiction of all civil actions" between citizens of different states, where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The parties agree that they are of diverse citizenship,[2] but they disagree about whether the amount in controversy exceeds $75,000. (*See* Doc. No. 6 at p. 3, ¶ 7.)

"It is now settled in this Court that the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before

---

[1] Although the Sciarrinos have filed an amended complaint, we focus on the allegations in the initial complaint because that was the operative pleading at the time that the case was removed. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) ("A district court's determination as to the amount in controversy must be based on the plaintiff's complaint at the time the petition for removal was filed." (quotation marks omitted)); *see also Pecko v. Allstate Ins. Co.*, 2016 WL 5239679 (E.D. Pa. 2016) ("A defendant's right to remove a case is determined according to the plaintiff's pleading at the time of the notice of removal.").

[2] The Sciarrinos are citizens of Pennsylvania, while State Farm is a citizen of Illinois. (*See* Doc. No. 1-1 at ¶ 1 (alleging that the plaintiffs reside at 425 Parham Rd., Springfield, Pennsylvania); Doc No. 1 at ¶ 7 (alleging that State Farm is organized under the laws of the State of Illinois with its principal place of business in Bloomington, Illinois).)

the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). State Farm argues that it has proven both by a preponderance of the evidence and to a legal certainty that the amount in controversy exceeds $75,000. (*See, e.g.*, Doc. No. 1 at ¶ 29; Doc. No. 8-1 at p. 14.) However, before we can analyze the merits of that argument, we must first determine whether the preponderance standard or the legal certainty standard controls.

A.

Between 2004 and 2007, the Third Circuit issued three opinions that addressed which standard of review governs a removal case when the amount in controversy is disputed. First, in *Samuel-Bassett v. KIA Motors America, Inc.*, the Third Circuit looked to United States Supreme Court precedent and concluded that the standard of review depends on the facts of the particular case. 357 F.3d 392, 397–98 (3d Cir. 2004). The court noted that in *McNutt v. General Motors*, the Supreme Court stated that "the party alleging jurisdiction [must] justify his allegations by a preponderance of the evidence." 298 U.S. 178, 190 (1936). In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, however, the Court explained that when a complaint is filed in federal court on diversity grounds, the amount in controversy claimed by the plaintiff controls if it is made in good faith, and it "must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." 303 U.S. 283, 289 (1938). The Third Circuit reconciled the two cases and concluded that either one or both standards could apply. *Samuel-Bassett*, 357 F.3d at 397–98. When the jurisdictional inquiry involves disputes of fact, "the *McNutt* preponderance of the evidence standard [is] appropriate." *Id.* at 398. But once those disputes are decided — or if the facts are not in dispute — the court looks to "whether *Red Cab*'s 'legal certainty' test for jurisdiction has been met." *Id.* (concluding that when the facts are not disputed and the court is deciding purely legal issues, "the preponderance of the evidence

3

standard would have no utility").

Two years after *Samuel-Bassett*, the Third Circuit decided *Morgan v. Gay*. In *Morgan*, the plaintiff's complaint stated that the amount in controversy was less than the jurisdictional requirement — a procedural detail that distinguished *Morgan* from *McNutt*, *Red Cab*, and *Samuel-Bassett*. *Morgan*, 471 F.3d at 471; *see also Frederico*, 507 F.3d at 195 ("The claims in *Samuel-Bassett*, *Red Cab* and *McNutt* did not involve such a limitation. The different circumstances in *Morgan* called for a different approach to determine whether there was federal jurisdiction."). The *Morgan* court held that in this situation, a modified legal certainty test applies, and the *defendant* must show "to a legal certainty that the amount in controversy *exceeds* the statutory minimum." 471 F.3d at 474 (alterations adopted, quotation marks omitted, and emphasis added).[3]

In 2007, the Third Circuit revisited the standard of review again, this time to address the difference between *Morgan*'s legal certainty standard and the *Red Cab* legal certainty standard described in *Samuel-Bassett*. *Frederico*, 507 F.3d at 196 (explaining that the "distinction between a case governed by *Morgan* and a case governed by *Samuel-Bassett* is crystal clear"). In *Frederico*, the court began by distinguishing the two standards:

> In [*Samuel-Bassett* and the cases cited by the *Samuel-Bassett* opinion], the *challenger* to subject matter jurisdiction had to prove, to a legal certainty, that the amount in controversy *could not exceed* the statutory threshold. . . . In *Morgan*, by contrast, we held that where the plaintiff expressly limits her claim below the jurisdictional amount as a precise statement in the complaint, applying the maxim that the plaintiff is the master of her own complaint, the *proponent* of the federal subject matter jurisdiction is held to a higher burden; that is, the proponent of

---

[3] In *Morgan* the court summed up its holding into "three main instructions" for removal cases where the complaint explicitly pleads that the amount in controversy is less than the jurisdictional amount: (1) "the party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold;" (2) "a plaintiff, if permitted by state laws, may limit her monetary claims to avoid the amount in controversy threshold;" and (3) "this Court must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not." 471 F.3d at 474–75.

4

> jurisdiction must show to a legal certainty that the amount in controversy *exceeds* the statutory threshold.

*Id.* at 195–96. In other words, *Morgan* presented a third test and built on the "*Samuel-Bassett* dichotomy" by holding that when the "complaint specifically (and not impliedly) and precisely (and not inferentially) states that the amount sought" is less than the jurisdictional requirement, the removing party must "prove by a legal certainty that the amount in controversy *exceeds* the statutory threshold." *Id.* (quoting *Morgan*, 471 F.3d at 471); *cf. Coates v. Nationwide Ins. Co.*, Civ. A. No. 12-4031, 2012 WL 4068437, at *4 (E.D. Pa. Sept. 14, 2012) ("Courts must apply the legal certainty standard differently, however, depending on whether the complaint explicitly limits the damages sought to less than the jurisdictional amount.").

In sum, the Third Circuit has identified three tests that apply in a removal case when the amount in controversy is disputed. First, when there are jurisdictional disputes of fact, the *McNutt/Samuel-Bassett* standard applies, and the defendant must "justify his allegations by a preponderance of the evidence." *McNutt*, 298 U.S. at 189. Second, when the jurisdictional amount is not contested as a factual matter and the amount in controversy "is determined in whole or in part by applicable law," the *Red Cab/Samuel-Bassett* framework applies, and the court asks "whether it is clear to a legal certainty that the plaintiff *cannot recover* the amount claimed." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 505 (3d Cir. 2014) (emphasis added). Third, when the jurisdictional facts are not in dispute and the complaint explicitly states that the amount in controversy is less than the jurisdictional minimum, the *Morgan* standard applies, and the defendant must "prove to a legal certainty that the complaint *exceeds* the statutory amount in controversy." *Morgan*, 471 F.3d at 475 (emphasis added).

Consistent with this framework, between 2007 and 2014, this court consistently applied *Morgan*'s "legal certainty" test when deciding removal cases — like this one — where the

5

plaintiff's complaint expressly limits the amount in controversy to a quantum below the jurisdictional threshold.  *See, e.g.*, *Wilson v. Walker*, 790 F. Supp. 2d 406, 410 (E.D. Pa. 2011); *Mazza v. Peerless Indem. Ins. Co.*, Civ. A. No. 13-3225, 2013 WL 4014569, at *2 (E.D. Pa. Aug. 7, 2013); *Coates*, 2012 WL 4068437, at *4; *Murray v. Safeco. Ins. Co. of Ind.*, Civ. No. 12-1089, 2012 WL 13018250, at *1 (E.D. Pa. Mar. 21, 2012); *Dunfee v. Allstate Ins. Co.*, Civ. A. No. 08-cv-01425, 2008 WL 2579799, at *5 (E.D. Pa. June 26, 2008).

B.

In December 2014, however, the legal certainty standard was called into question by the Third Circuit and the United States Supreme Court.  In each opinion, the court referenced the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), which states that when the Court's jurisdiction is based on diversity, "removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, *by a preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2)(B) (emphasis added).

First, in *Judon v. Travelers Property Casualty Co. of America*, a case removed under the Class Action Fairness Act (CAFA), the Third Circuit reviewed the jurisdictional tests described in *McNutt*, *Red Cab*, and *Samuel-Bassett* and reiterated that the proper test "depends on the nature of the jurisdictional facts alleged and whether they are in dispute." 773 F.3d at 500.  The court found "at least two distinct tests potentially relevant here with regard to removal jurisdiction":  (1) the *McNutt/Samuel-Bassett* preponderance of the evidence framework applies "where a challenge to the amount in controversy had been raised in the pleadings or the notice of removal but no evidence or findings in the trial court addressed that issue;" and (2) the *Red Cab/Samuel-Bassett* legal certainty framework applies "where the jurisdictional facts are not

6

contested and the amount in controversy is determined in whole or in part by applicable law." *Id.* at 504–05.  The court recognized *Morgan*'s legal certainty standard represented a third jurisdictional test, but that test did not apply because the complaint had not expressly limited the amount in controversy to an amount less than the jurisdictional minimum.  *Id.* at 504 n.8.  After describing the three tests, the court noted in a footnote that the JVCA, which explicitly calls for a preponderance of the evidence test, "may limit the application of *Red Cab* in some traditional diversity actions." *Id.* at 504 n.7.  The court did not address the issue further, however, because it concluded that the JVCA did not affect CAFA cases, which are removed under § 1332(d), not § 1332(a).  *Id.* (noting that the JVCA refers to the amount in controversy "specified in section 1332(a)").

Three days after the Third Circuit issued its opinion in *Judon*, the Supreme Court discussed the JVCA in *Dart Cherokee Basin Operating Co. v. Owens*.  *See* 574 U.S. 81, 88–89 (2014).  In *Dart Cherokee Basin*, the "single question" at issue was whether a removing defendant can "allege the requisite amount [in controversy] plausibly," or does it need to include in "the notice of removal evidence supporting the allegation."[4]  *Id.* at 84.  The Court held that the removal statute required a "statement 'short and plain,'" and that statement "need not contain evidentiary submissions."  *Id.*  In its analysis, the Court discussed the JVCA and explained that it "clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged.  In such a case, both sides submit proof and the court decides, *by a preponderance of the evidence*, whether the amount in controversy has been satisfied."  *Id*. at 88 (emphasis added).

---

[4] Like *Judon*, the Supreme Court in *Dart Cherokee Basin* was reviewing a case removed under CAFA, but the Supreme Court did not decide whether CAFA cases are subject to a different standard of review than traditional removal cases.  *See Dart Cherokee Basin Operating Co.*, 574 U.S. at 88, n.1 (assuming without deciding that the JVCA applies to CAFA cases and traditional diversity cases) (citing *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) ("There is no logical reason why we should demand more from a CAFA defendant than other parties invoking federal jurisdiction." (alterations adopted))).

The Court also quoted the House Judiciary Committee Report on the JVCA, which observed that "[d]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id*. at 88–89 (alterations adopted) (quoting H.R. Rep. No. 112–10, p. 16 (2011)).

Following *Dart Cherokee Basin*, at least one district court in this Circuit has questioned the continued viability of the *Morgan* legal certainty standard. *See Grace v. T.G.I. Fridays, Inc.*, Civ. No. 14-7233 (RBK/KMW), 2015 WL 4523639, at *5 (D.N.J. July 27, 2015) ("This Court finds that the Supreme Court's recent decision in [*Dart Cherokee Basin Op. Co., LLC v*.] *Owens* . . . calls into question the soundness of the reasoning given by the court in *Morgan* for applying the legal certainty test rather than the preponderance of the evidence test."). And although some courts in this District have continued to apply *Morgan*'s legal certainty test in cases like this one, others have looked solely to the preponderance standard. *Compare Pecko*, 2016 WL 5239679, at *2 (applying legal certainty test described in *Morgan*), *with Sharawi v. WWR Premier Holdings, LLC*, Civil A. No. 19-5133, 2020 WL 93942, at *4 (E.D. Pa. Jan. 7, 2020) (applying preponderance of the evidence test and citing *Dart Cherokee Basin*).

We recite this lengthy history in part to highlight the confusion surrounding this issue — an issue which neither party discussed in their briefing on the motion to remand.[5] It is also directly relevant to the question in front of us: Which standard of review applies in this case?

---

[5] As mentioned above, in its notice of removal and response brief, State Farm suggests that both the preponderance standard and the legal certainty test apply, (Doc. No. 1 at p. 5 ("The defendant must prove the amount in controversy by a preponderance of the evidence."); Doc. No. 81-1 at pp. 2 ("[T]he removing defendant must show, by a preponderance of the evidence, that the amount in controversy exceeds $75,00."), 14 ("State Farm submits that it has proven to a legal certainty that plaintiffs have alleged damages in excess of the amount in controversy threshold of $75,00 . . . ."). The Sciarrinos do not provide any standard of review for the Court.

Having reviewed the case law, we believe *Morgan*'s legal certainty standard remains the law of this Circuit and controls in this case. Although the Supreme Court's opinion in *Dart Cherokee Basin* and the Third Circuit's opinion in *Judon* call into question the legal certainty tests of *Red Cab* and *Morgan*, neither court explicitly overturned the *Red Cab/Samuel-Bassett* legal certainty standard or the *Morgan* legal certainty standard. *See United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 155 (3d Cir. 2005) (reaffirming strict adherence to the principle that a lower court should leave to a higher court "the prerogative of overruling its own decisions" (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)); *Guerra v. GMAC LLC*, Civ. A. No. 2:08-cv-01297-LDD, 2009 WL 449153, at *2 n.3 (E.D. Pa. Feb. 20, 2009) ("[W]e remain bound by controlling Third Circuit precedent in the absence of a square holding overruling that precedent."); *United States v. Walker*, Civ. A. No. 06-2265, 2007 WL 172335, at *3 (E.D. Pa. Jan. 22, 2007) ("[U]ntil the Supreme Court or the Third Circuit expressly overrules [a published Third Circuit opinion], we are still bound by it."). Therefore, *Samuel-Bassett*, *Morgan*, *Frederico*, and *Judon* govern State Farm's motion to remand.

Applying the framework described in those cases, we note that neither party has raised an issue of fact, so we do not apply the *McNutt/Samuel-Bassett* preponderance of the evidence test. (*See, e.g.*, Doc. No. 1 at p. 2 (asserting that "the amount in controversy in this matter exceeds $75,000 *based on the allegations contained in plaintiff's complaint*" (emphasis added)).) Instead, the parties contest the legal effect of the Sciarrinos' request for punitive damages and the complaint's *ad damnum* clauses, which state that the amount in controversy is below the jurisdictional minimum. In this context, we apply *Morgan*'s legal certainty standard, and State Farm must "prove by a legal certainty that the amount in controversy exceeds the statutory threshold." *Morgan*, 471 F.3d at 471. With this standard in mind, we turn to State Farm's

9

argument that the amount in controversy requirement is met.

III.

In calculating the amount in controversy, we must determine whether "the plaintiff's actual monetary demands in the aggregate exceed the [jurisdictional] threshold, irrespective of whether the plaintiff states that the demands do not." [6] *Morgan*, 471 F.3d at 474–75. In making that determination, we aggregate the claims brought by one plaintiff against one defendant, *see Werwinski*, 286 F.3d at 666 ("[C]laims, whether related or unrelated, of a single plaintiff against a single defendant may be aggregated."), and we consider punitive damages and attorney's fees, as well as compensatory damages, *see Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993) ("When both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied."); *see also Dunfee*, 2088 WL 2579799, at *8 (considering both punitive damages and attorney's fees in determining whether the amount in controversy was met). However, in considering punitive damages, the court's estimations of the amount in controversy "must be realistic," and all

---

[6] Under *Morgan*, a plaintiff "may limit her monetary claims to avoid the amount in controversy threshold" if allowed by state law. *Morgan*, 471 F.3d at 474–75. In Pennsylvania, $50,000 is the jurisdictional limit for compulsory arbitration, and therefore, a plaintiff may state in the complaint that the amount in controversy does not exceed that limit. 42 Pa. Cons. Stat. § 7361 ("No matter shall be referred [to compulsory arbitration] where the amount in controversy, exclusive of interest and costs, exceeds $50,000."); Phila. Civ. R. 1301 ("[A]ll cases having an amount in controversy . . . of $50,000 or less shall be assigned to the Compulsory Arbitration Program."). This amount, however, is not a cap on the amount of damages that a plaintiff may ultimately recover. *See Wilson*, 790 F. Supp. 2d at 408–09 ("Pennsylvania courts have not construed that statute as creating a $50,000 damages cap. On the contrary, they have held that in any *de novo* trial after arbitration, the plaintiff may seek more than $50,000."); *Pecko*, 2016 WL 5239679, at *3 ("This Court is persuaded by the courts in this District finding that [the arbitration statute] merely creates a jurisdictional trigger and is not a substantive recovery limit. . . . Accordingly, the Court will not treat the fact that [the statute] caps damages at $50,000 as dispositive and will look to other evidence to determine whether Allstate can meet its burden to prove to a legal certainty that the complaint exceeds the statutory amount in controversy requirement." (quotation marks omitted)). Therefore, "eligibility for arbitration does not compel remand." *Brent v. First Student, Inc.*, No. 19-6023, 2020 WL 254328, at *3–4 (E.D. Pa. May 20, 2020). Likewise, State Farm cannot show to a legal certainty that the amount in controversy is met merely by stating that the Sciarrinos may ultimately receive more than $50,000 — or even $75,000 — on appeal of an arbitration award. *See, e.g.*, *Coates*, 2012 WL 4068437, at *4 ("The legal certainty test and the rule requiring courts to resolve all doubts in favor of remand would ring hollow if the mere possibility that a plaintiff could recover more than $75,000 from an appeal of a compulsory arbitration satisfied Defendants' burden." (quotations marks omitted)).

"doubts must be construed in favor of remand." *Samuel-Bassett*, 357 F.3d at 403.  "The inquiry should be objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated." *Id.*

The parties agree that the Sciarrinos' breach of contract claim seeks compensatory damages totaling $24,204.01.  (*See* Doc. No. 6 at p. 3, ¶ 9; Doc No. 8-1 at p. 2.)  The parties disagree, however, about the effect of the bad faith claim, under which the Sciarrinos allege that State Farm is liable for "interest . . . , court costs, attorneys' fees, punitive damages and such other compensatory and/or consequential damages as are permitted by law." (Doc. No. 1-1 at ¶ 16.)

State Farm argues that the amount in controversy is met once punitive damages and attorney's fees are considered.  The notice of removal states that it "is not unreasonable to expect that a punitive damage award three or four times the amount in controversy, or beyond, could be rendered by the trier of fact."  (Doc. No. 1 at ¶ 26.)  And applying a ratio of two, State Farm calculates that the punitive damages request is worth at least $48,408.02.  (*Id.* at ¶ 30.)  Similarly, for its attorney's fees figure, State Farm states that it "would not be unreasonable to expect that over the course of an approximate ten-month litigation of this matter that counsel could incur costs and fees in an amount approaching $30,000." (*Id.* at ¶ 28.)  Adding together the total for compensatory damages and its estimates for punitive damages and attorney's fees, State Farm concludes that the amount in controversy is at least $102,612.03.  (*Id.* at ¶ 30.)

This court has remanded similar cases after finding that the defendant failed to prove punitive damages to a legal certainty.  For example in *Dunfee v. Allstate Insurance Co.*, the plaintiffs raised identical claims to those brought here. 2008 WL 2579799, at *1 (explaining that the plaintiffs brought a breach of contract claim and a bad faith claim against Allstate when the

11

company failed to pay them for property losses covered by the insurance policy). The plaintiffs sought compensatory damages totaling around $39,000 under the breach of contract claim and requested punitive damages and attorney's fees under the bad faith claim. *Id.* at *2. Allstate argued that "even a 1:1 ratio of punitive damages to compensatory damages is all that is necessary to meet the jurisdictional requirement" and "even if no punitive damages are awarded, an award of attorney costs alone could satisfy the jurisdictional minimum for removal." *Id*. The court held that Allstate had not shown "to a legal certainty that the amount in dispute exceeds $75,000." *Id.* at *8. It relied on the language in defendant's notice of removal, which stated that the "claims for punitive damages and attorney fees, amongst other relief . . . *could* exceed $75,000." *Id.* (quoting Def.'s Notice of Removal at 2). Similarly, the defendant's response brief stated that it is "certainly possible for the damages to meet or exceed the jurisdictional limit of $75,000." *Id.* (quoting Def.'s Mot. Br. at 6). The court found that "Defendant's argument that damages 'could' exceed $75,000 or that it is 'certainly possible' to exceed $75,000 does not prove it is legally certain the amount in controversy exceeds $75,000." *Id.*; *see also Mazza*, 2013 WL 4014569, at *2 ("Peerless's burden to prove the amount in controversy to a legal certainty is not satisfied by the suggestion of possible future events."); *cf. Pecko*, 2016 WL 5239679, at *4 ("While a claim for punitive damages alone is too speculative to push the amount in controversy over the jurisdictional threshold . . . the Court finds that in conjunction with estimated damages of $136,905.20, Ms. Pecko's claim for punitive damages weighs in favor of a determination that the amount in controversy requirement is met in this case.").

Similarly, in *Mazza v. Peerless Indemnity Insurance Co.*, the plaintiff brought claims for breach of contract and bad faith under her homeowner's insurance policy when the insurance company denied her claim for accidental water damage. 2013 WL 4014569, at *1. Because her

compensatory damages totaled $11,511.65, the insurance company had to prove "to a legal certainty that over $63,000 in punitive damages are recoverable to meet the jurisdictional amount." *Id.* at *2. The court found it had not met this burden for two reasons. First, the plaintiff "is not certain to recover punitive damages at all, as she has not alleged any particular facts suggesting bad faith on the part of [the insurance company], other than her assertion that she was entitled to benefits but has not received them." *Id.* Second, the insurance company "has supplied no basis for the Court to find that [the plaintiff] will recover the necessary amount of punitive damages." *Id.*; *see also Morgan*, 471 F.3d at 475 (finding defendants could not rely on a demand for punitive damages to meet the amount in controversy requirement because they "failed to prove what possible exposure existed with respect to punitive damages"); *Coates*, 2012 WL 4068437, at *4 (finding that the defendant was "unable to prove to a legal certainty that the punitive damages and other relief Plaintiff seeks would push the amount in controversy above $75,000" because "whether and what punitive damages to which Plaintiff is entitled is not sufficiently concrete to meet the legal certainty standard").

Like the defendants in *Dunfee* and *Mazza*, here State Farm has not proven to a legal certainty that the request for punitive damages and attorney's fees pushes the amount in controversy above the $75,000 threshold. Like the defendant in *Dunfee*, State Farm alleges that it is not "unreasonable" to find that punitive damages "could" amount to three or four times the amount in controversy, and that it would "not be unreasonable" to find that attorney's fees "could" approach $30,000.[7] (Doc. No. 1 at ¶¶ 26, 29.) But State Farm cannot satisfy its burden by pointing to the mere possibility that the Sciarrinos "could" be awarded punitive damages and

---

[7] State Farm is correct that "punitive damages and attorneys' fees are available under 42 Pa. Cons. Stat. Ann. § 8371 and there is no cap on the amount that can be recovered." (Doc. No. 8-1 at pp. 8–9 (quoting *Minissale v. State Farm Fire & Cas. Co.*, 988 F. Supp. 2d 472, 476 (E.D. Pa. 2013)).) But, as explained above, under *Morgan*'s legal certainty test, State Farm must show more than that punitive damages *could* be recovered.

13

attorney's fees above the amount in controversy threshold. Moreover, like the plaintiff in *Mazza*, the Sciarrinos are "not certain to recover punitive damages at all," because the complaint does not allege "any particular facts suggesting bad faith on the part of [the insurance company], other than [the] assertion that [they were] entitled to benefits but ha[ve] not received them."[8]

Without more, we cannot find that State Farm has carried its burden of showing to a legal certainty that the amount in controversy exceeds $75,000, and we must remand the case.[9] However, if on remand, State Farm uncovers new evidence which shows that the amount in controversy exceeds $75,000, it may again seek removal to this Court. *See Judon*, 773 F.3d at 509 ("In the event Travelers is unsuccessful in establishing CAFA jurisdiction during the early stages of this action, Travelers may still re-remove the case to federal court if new facts are discovered that establish jurisdiction.").

An appropriate order follows.

---

[8] On this point, it is worth noting that State Farm argues in its motion to dismiss that the complaint fails to state a claim for bad faith because it does not "provide the factual allegations necessary to show that State Farm ever denied plaintiffs' claim, and/or what delays it caused, and/or what misrepresentations it allegedly made, and/or knew or recklessly regarded its alleged lack of reasonable basis for its claims handling." (Doc. No. 3 at ¶¶ 16, 17 (stating that "Count II and the 'bare-bones' conclusory allegations therein . . . fail to state a claim for bad faith as a matter of law").)

[9] The Sciarrinos ask the Court to "assess counsel fees in accordance with 28 U.S.C. § 1447(c) against the Defendant" because State Farm did not satisfy its burden of "establishing compliance with the statutory requirements for the removal of this matter to Federal Court." (Doc. No. 6 at p. 6.) Section 1447(c) states that an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 42 U.S.C. § 1447(c). The Court will not assess attorney's fees in this case. As should be clear from this Opinion's lengthy discussion on the standard of review, the law in this area is complicated. The Court finds that State Farm had a reasonable argument in favor of removal and did not act in bad faith when it removed the case to this Court.